**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1716
_____

UNITED STATES OF AMERICA

v.

DAVAE CRAIG,
                              Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 09-cr-00105-001)
District Judge:  Honorable Stewart Dalzell

_____

Submitted Under Third Circuit LAR 34.1(a)
June 20, 2011
_____

Before: BARRY, AMBRO and COWEN, Circuit Judges

(Opinion Filed: June 28, 2011)
_____

OPINION
_____

BARRY, Circuit Judge

Davae Craig appeals from his conviction on a variety of counts stemming from his

role in a conspiracy to distribute heroin with his brother, David.  As we conclude that the

District Court did not err, much less commit plain error, in not sua sponte granting a

judgment of acquittal on any of the counts charged in the indictment, we will affirm.

## I. Background

### A. Facts

#### 1. The August 28 Transaction

On August 28, 2008, Detective Catherine Lanning[1] of the Falls Township, Pennsylvania, Police Department and a confidential informant ("CI") placed a telephone call to a number ending in -8500 associated with the defendant, Davae Craig, and his brother, David Craig. During the call, the CI ordered two bundles of heroin for $130 and was instructed to go to the 7-Eleven store in Morrisville, Pennsylvania, to complete the transaction.

Lanning and the CI drove to the 7-Eleven and parked in front of the store. After waiting for five or ten minutes, they called the same number to report that they had arrived. Shortly thereafter, Davae arrived in a white Ford Explorer and exchanged the drugs for the money. The drugs were wrapped in small wax paper baggies and stamped in green ink with "60-40." After completing the sale, Davae drove across the street to the 1200 building of the Wellington Woods apartment complex.

#### 2. The September 4 Transaction

On September 4, 2008, Lanning and the CI again called the -8500 number that they had used on August 28. When that call went to voicemail, they tried a different

---

[1] Between the investigation and the trial, Detective Lanning married and changed her last name. We will, however, for continuity purposes, refer to her as Detective Lanning.

number ending in -8600.  Once on the line, the CI ordered three bundles of heroin for $180 and was instructed to go to the parking lot of the Acme store in Morrisville, Pennsylvania, to complete the transaction.

Upon arriving and again calling the -8600 number, Lanning and the CI were instructed to go to the parking lot behind the 1200 and 1400 buildings in the Wellington Woods complex.  After they arrived there, Lanning saw David walk down a sidewalk from an area behind the 1200 and 1400 buildings.  He then approached the vehicle and exchanged the drugs for the money.  The drugs were wrapped in small wax paper baggies bound with rubber bands and stamped in red ink with "hell boy."  After completing the sale, David returned towards the 1200 building of the Wellington Woods apartment complex.

### 3.  The September 23 Transaction

On September 23, 2008, Lanning and the CI called the number ending in -8600 and made arrangements to purchase three bundles of heroin for $180.  The person answering the phone instructed them to go to the parking lot of the Wellington Woods apartment complex to complete the transaction.

Upon arriving at the parking lot, they called the same number.  David instructed them to exit the car and walk up the sidewalk towards the 1200 building.  David exchanged the drugs for the money and walked back towards the 1200 building.  The drugs again consisted of small wax paper baggies bound with rubber bands and stamped

3

in red ink with "hell boy."

## 4. The Search

On September 25, 2008, Detective Joseph Coffman called a phone number ending in -3624 that belonged to Davae. Although no one answered, Coffman immediately received a call back from David, dialed from the same number. Once on the call, Coffman made arrangements to purchase two bundles of heroin. David asked if he was speaking with "Mike," and Coffman said that he was.

Shortly thereafter, police entered an apartment located in the 1200 building of the Wellington Woods complex and executed a search warrant.[2] Both brothers were arrested and taken to police headquarters, and the police searched the apartment. The search of Davae's bedroom recovered (1) a loaded nine-millimeter Ruger semi-automatic handgun, and (2) approximately $1316 in cash located inside a pair of jeans. The search of David's bedroom recovered (1) a small safe inside the closet containing approximately 5300 bags of heroin, (2) a shopping bag on a closet shelf containing additional heroin, (3) two Hi-Point nine-millimeter semi-automatic handguns, (4) a box containing nine-millimeter ammunition (5) a Glock handgun case containing a loaded magazine, (6) approximately $3800 in cash underneath the liner of a trash can, and (7) pre-recorded buy money from the two transactions in which David delivered the drugs. Police also recovered approximately nineteen cell phones throughout the apartment.

---

[2] The parties stipulated that Davae Craig had signed the rental agreement for the apartment, and evidence at trial established that both brothers resided there.

4

### 5. Davae's Interview

At the police station, Coffman administered *Miranda* warnings to Davae and interviewed him. During this interview, Davae confirmed that the -3624 number from which Coffman had spoken to David belonged to him.

### B. Procedural History

David and Davae were both indicted on February 19, 2009. The indictment charged each defendant with the following six counts:

1. Conspiracy to distribute 100 grams of more of heroin.

2. Distribution of heroin (and aiding and abetting) on August 28, 2008.

3. Distribution of heroin (and aiding and abetting) on September 4, 2008.

4. Distribution of heroin (and aiding and abetting) on September 23, 2008.

5. Possession of more than 100 grams of heroin with intent to distribute (and aiding and abetting) on September 25, 2008.

6. Possession of a firearm in furtherance of a drug trafficking crime (and aiding and abetting) on September 25, 2008.

On November 30, 2009, David pleaded guilty to all six counts. Davae proceeded to trial, and on December 2, 2009, a jury returned a verdict finding him guilty of all counts. Davae never moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

At a sentencing hearing held on March 8, 2010, the District Court sentenced Davae to 144 months' imprisonment.

## II. Jurisdiction and Standard of Review

The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

Whenever a defendant contends that the evidence was insufficient to support his conviction, "we must view the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (citation and internal quotation marks omitted). Where, as here, the defendant fails to make a Rule 29 motion in the District Court, the standard is even more deferential: "[a] conviction based on insufficient evidence is plain error only if the verdict constitutes a fundamental miscarriage of justice." *United States v. Thayer*, 201 F.3d 214, 219 (3d Cir. 1999) (internal quotation marks omitted).

## III. Discussion

Davae conceded at trial that he was guilty of the offense charged in count two, admitting that he did sell heroin on August 28, 2008. He nevertheless contends that the evidence was insufficient with respect to counts one, three, four, five, and six such that the District Court's failure to sua sponte enter a judgment of acquittal was plain error. We disagree.

### A. Counts One, Three, Four, and Six

Davae contends that there was insufficient evidence to conclude that he and David

6

were members of a conspiracy, as opposed to merely independent operators who lived together and both sold heroin. He therefore argues that his conviction on count one, the conspiracy count, must fail.[3]

The elements of a charge of conspiracy under 21 U.S.C. § 846 are "(1) a unity of purpose between the alleged conspirators; (2) an intent to achieve a common goal; and (3) an agreement to work together toward that goal." *United States v. Pressler*, 256 F.3d 144, 149 (3d Cir. 2001). As we have held, a "conspiracy can be proven by direct or circumstantial evidence," and its "existence can be inferred from evidence of related facts and circumstances from which it appears, as a reasonable and logical inference, that the activities of the participants could not have been carried on except as a result of a preconceived scheme or common understanding." *United States v. Boria*, 592 F.3d 476, 481 (3d Cir. 2010).

Davae contends that the government failed to proffer sufficient evidence to prove these elements, as there was no evidence of joint activity, no evidence that the brothers shared a common source of heroin, and no evidence that they had agreed to use the firearms found in their bedrooms to protect each other's drugs and money. Davae also

---

[3] Our resolution of count one is also dispositive of counts three, four, and six. Davae concedes that if his conviction for count one is upheld, his conviction for counts three and four must be upheld as well, on the basis of co-conspirator liability. (Davae Br. 33.) He also concedes in his reply brief that if his conviction for count one is upheld, his conviction for count six must also be upheld because the Ruger firearm found in his bedroom was strategically located to protect his drug proceeds, and thus if those proceeds were the fruits of a conspiracy, he is guilty of that count as well. (Davae Reply 42.)

7

notes that the heroin that he sold had a different marking than the heroin sold by David.

We reject these arguments. The evidence presented to the jury included the following: (1) after each sale, the seller immediately returned to the apartment where the brothers resided together, (2) no heroin was found in Davae's bedroom, suggesting that he did not maintain a separate stash (3) nineteen cell phones were located throughout the brothers' apartment, with no indication of individual ownership, and (4) David returned a call placed to Davae's cell phone to negotiate a narcotics transaction, and even sought to identify the customer. In light of this substantial body of evidence, the fact that the District Court did not sua sponte enter a judgment of acquittal on count one was not plain error.

## B. Count Five

Count five charged Davae with knowing and intentional possession of 100 grams or more of heroin, with intent to distribute, on September 25, 2008, the day that the police executed the search warrant in his apartment. Davae argues that the heroin to which the indictment refers was located in a safe inside a closet in his brother's bedroom, and that there was no evidence that he was aware of its presence there.[4]

Again, Davae cannot demonstrate that the fact that the District Court did not sua sponte enter a judgment of acquittal was plain error. As noted above, the jury could have

---

[4] Although Davae conceded that co-conspirator liability based on count one supports his convictions for counts three and four, he makes no such concession with respect to count five. In light of the District Court's failure to instruct the jury on the theory of co-

rationally concluded that Davae and David were members of a heroin-distribution conspiracy and that they both used the heroin in David's closet to supply their shared customers. Additionally, the jury was permitted to consider the fact that Davae was the lessee of the apartment. *See Jackson v. Byrd*, 105 F.3d 145, 150 (3d Cir. 1997) (noting that where the defendant "was the lessee of the apartment and had access to all parts of it," this fact "logically tend[s] to support a conclusion that she had constructive possession of the apartment's contents"); *see also United States v. Introcaso*, 506 F.3d 260, 271 (3d Cir. 2007) (citing *United States v. Wahl*, 290 F.3d 370, 376-77 (D.C. Cir. 2002), for the proposition that a "jury may infer that a person exercises constructive possession over items found in his or her home").

## IV. Conclusion

We will affirm the judgment of the District Court.

---

conspirator liability, and out of an excess of caution, we will discuss Davae's personal liability for the offense.